UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PLYMOVENT CORPORATION, | : | |
| | : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | : | |
| | : | Civil Action No. 05-351 (JEI) |
| v. | : | |
| | : | **OPINION** |
| AIR TECHNOLOGY SOLUTIONS, | : | |
| INC., | : | |
| | : | |
| Defendant / | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CLEAN AIR COMPANY, | : | |
| | : | |
| Third-Party Defendant. | : | |
| ----------------------------- | : | |
| | : | |
| BIOLOGICAL CONTROLS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PLYMOVENT, A.B. et. al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

WINDELS MARX LANE & MITTENDORF, LLP
By: Timothy J. O'Neill, Esq.
    Rocco Luisi, Esq.
104 Carnegie Center, Suite 201
Princeton, NJ 08540
    Attorneys for PlymoVent Corporation & PlymoVent, A.B.

LAW OFFICES OF ANNE C. SINGER
By: Anne C. Singer, Esq.
34 Tanner Street
Haddonfield, NJ 08033
    Attorneys for Air Technology Solutions, Inc.

MESSINA LAW FIRM, P.C.
By: Ekaterina Schoenefeld, Esq.
    Gil D. Messina, Esq.
961 Holmdel Road
Holmdel, NJ 07733
    Attorneys for Biological Controls, Inc. and Air Technology
    Solutions, Inc.

MINTZER, SAROWITZ, ZERIS, LEVDA & MEYERS, LLP
By: John H. Maucher, Esq.
2070 Springdale Road, Suite 400
Cherry Hill, NJ 08003
    Attorneys for Biological Controls, Inc.

MATHEWS, SHEPHERD, MCKAY & BRUNEAU, P.A.
By: Kristine Butler-Holston, Esq.
    Robert G. Shepherd, Esq.
29 Thanet Road, Suite 201
Princeton, NJ 08540
    Attorneys for Third Party Defendant Clean Air Company


**IRENAS**, Senior District Judge:

    This matter comes before the Court on the appeal of
Biological Controls, Inc. ("Biological") from the Magistrate
Judge's Order Quashing a *Subpoena Duces Tecum* seeking disclosure
of materials of a nontestifying expert.  For the reasons set
forth below, the Court will affirm the order.


                            **I.**

    This is a lawsuit between competitors who manufacture diesel
exhaust removal systems, which are used primarily in fire
stations.  Both systems are meant to remove exhaust emissions
from indoor garages.  Biological's system, "AirMATION," filters
air through a unit mounted on the ceiling of the garage, whereas

                              2

Plymovent Corporation's ("Plymovent") hose-based system removes exhaust directly from a vehicle's tailpipe through an attached hose.[1]

The parties' dispute found its way to this Court on January, 20, 2005, when Plymovent filed a complaint against Air Technology alleging false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-19.  Plymovent sought preliminary injunctive relief on all three claims.

After expedited discovery, this Court held a preliminary injunction hearing on February 17, 2005.[2]  In preparation for the hearing, Plymovent retained Atlantic Environmental, Inc., to perform a side-by-side emissions control study comparing the performance of Biological's system with Plymovent's system in a fire station.  The control study was videotaped, and Henry P. Shotwell, Ph.D., CIH,[3] Atlantic Environmental's Vice President, created an accompanying report.  Shotwell essentially concluded that Plymovent's system was effective and Biological's system was

---

[1] Air Technology Solutions, Inc. ("Air Technology"), sells Biological's AirMATION system.  Clean Air Company ("Clean Air") purchases the hose-based systems from Plymovent and then sells and installs the systems.  Plymovent A.B. is the Swedish parent company of Plymovent Corporation, and manufactures some of the components of the hose-based system.

[2] On the same day, Biological filed a complaint against PlymoVent and Clean Air, alleging that PlymoVent and Clean Air made knowingly false statements and representations about the AirMATION and PlymoVent systems. The two actions were consolidated on July 14, 2005.

[3] CIH apparently stands for "certified industrial hygienist."

not.  Plymovent submitted both the videotape and the report to the Court in advance of the preliminary injunction hearing.

The parties do not dispute that Plymovent intended to call Dr. Shotwell to testify as an expert witness at the preliminary injunction hearing, and that he was present in the courtroom on the day of the hearing.  However, before Plymovent could call Dr. Shotwell, the Court inquired whether Plymovent would like to reconsider its reliance on the videotape and report.  The following exchange occurred on the record:

> The Court: [A]re you going to rely on that tape and the report that's based on that tape, or are you going to ignore and proceed without it-- . . . You think that helps your case?
>
> Mr. O'Neill:  Absolutely, your Honor.  For the purposes of today, it provides--
>
> The Court:  You don't want to reconsider that position [?]
>
> Mr. O'Neill:  Your Honor, what it does--
>
> The Court:  I will give you a chance.
>
> Mr. O'Neill:  What it does, you Honor, is it provides the Court with a visual representation--
>
> The Court:  It's a travesty of the scientific method, it's a travesty.  It's the only word I can think of.  I'm not saying that if it's done right you might not reach the same results, but who knows.  It's a travesty. . . . I don't have to be much of a scientist to know that that report has about 35 different variables in there, none of which are harmonized.  I mean it's a travesty.  So, I just want to know if you want to rely on it, or you think you have a good case without it.
>
> Mr. O'Neill:  I have a very good case without it.

4

The Court: All right.

(Schoenfeld Decl. Ex. F, preliminary injunction hearing transcript at p. 11-12).

The Court denied preliminary injunctive relief and the parties proceeded to engage in formal discovery.  In the course of discovery, PlymoVent produced the Shotwell Report and videotape to Biological, as well as two Atlantic Environmental invoices charging Plymovent for the emissions study and Mr. Shotwell's attendance at the preliminary injunction hearing.

PlymoVent indicated in its Initial Disclosures,[4] dated July 26, 2005, that it was presently in the process of evaluating its need for experts.  Similarly, on January 18, 2006, PlymoVent answered Air Technology's and Biological's interrogatories regarding testifying experts by stating that it "has not yet made a decision regarding whom it expects to call as an expert witness at trial."

By a letter dated October 3, 2006, Biological inquired whether PlymoVent intended "to continue" to use Atlantic Environmental as an expert in the case.  PlymoVent responded that although it retained Atlantic Environmental in anticipation of litigation or preparation for trial, it did not expect to call any Atlantic Environmental representative as a witness at trial.

---

[4]  *See* Fed. R. Civ. P. 26(a)(1).

PlymoVent never formally designated anyone from Atlantic Environmental as a testifying expert witness.

On November 13, 2006, before the deadline for serving expert reports, Biological served on Atlantic Environmental a *subpoena duces tecum*, seeking documents "referring or relating to" the Shotwell Report and videotape.  Specifically, the subpoena requested:

> 1.  All Documents and Communications related to contracts between PlymoVent . . . or its counsel, Windels, Marx, Lane and Mittendorf, LLP and Atlantic Environmental, Inc., including but not limited to, communications, contracts, proposals, purchase orders, engagement letters, reports, test data, video depictions, notes and invoices relating to work performed by Atlantic Environmental, Inc. for PlymoVent and/or its counsel.
>
> 2.  All Documents and Communications referring or relating to tests performed by Atlantic Environmental, Inc. on the AirMation air filtration product.
>
> 3.  All Documents and Communications referring or relating to tests performed by Atlantic Environmental, Inc. on PlymoVent's diesel exhaust hose extraction system and components thereof.
>
> 4.  All Documents and Communications referring or relating to comparison tests of the PlymoVent and AirMation systems performed by Atlantic Environmental, Inc.

(Schoenefeld Decl. Ex. J).

Plymovent moved to quash the subpoena, and on May 14, 2007, Magistrate Judge Schneider heard arguments on the motion.  He granted the Motion to Quash holding that, as a nontestifying expert, Atlantic Environmental's records were protected under Fed. R. Civ. P. 26(b)(4)(B) because Biological had not

demonstrated "exceptional circumstances," as required by the rule.  This appeal followed.

## II.

The District Court has jurisdiction to hear appeals from the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A).  The provision reads in relevant part:  "[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court . . . [and] may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

The District Court applies a clearly erroneous standard of review to findings of fact and conducts a plenary review of matters of law.  *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d. Cir. 1992); *see also* Fed. R. Civ. P. 72(a).

## III.

Rule 26(b)(4) addresses the scope and limits of discovery with respect to testifying and nontestifying experts respectively:

> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. . . .

> (B) A party may, through interrogatories or by deposition, discover facts known or opinions held by

7

> an expert who has been retained or specially
> employed by another party in anticipation of
> litigation or preparation for trial and who is not
> expected to be called as a witness at trial only as
> provided in Rule 35(b)[5] or upon a showing of
> exceptional circumstances under which it is
> impracticable for the party seeking discovery to
> obtain facts or opinions on the same subject by
> other means.

Fed. R. Civ. P. 26(b)(4)(A)-(B).  Rule 26(b)(4)(B) thus creates a

safe harbor whereby facts and opinions of nontestifying,

consulting experts are shielded from discovery, except upon a

showing of exceptional circumstances.  Indeed, some courts have

construed 26(b)(4)(B) as creating a privilege against

disclosure.[6]

Several policy considerations underlie the rule, including,

(1) encouraging counsel to obtain necessary expert advice without

fear that the adversary may obtain such information; (2)

preventing unfairness that would result from allowing an opposing

party to reap the benefits from another party's efforts and

expense; (3) preventing a chilling effect on experts serving as

consultants if their testimony could be compelled; and (4)

preventing prejudice to the retaining party if the opposing party

---

[5]  Rule 35(b) pertains to reports generated as a result of "physical and mental examinations of persons."

[6]  *See, e.g., FMC Corp. v. Vendo* Co., 196 F. Supp. 2d 1023, 1044 (E.D. Cal. 2002)(describing the rule's protection as "the free consultation privilege"); *Texas Lawyers Ins. Exchange v. Resolution Trust Corp.,* 822 F. Supp. 380, 382 (W.D. Tex. 1993) ("the consultant witness privilege"); *cf. Dayton-Phoenix Group, Inc. v. General Motors Corp.,* 1997 WL 1764760 at *1, n.2 (S.D. Ohio Feb. 19, 1997)("Rule 26(b)(4)(B) is a specialized application of the work product doctrine.").

were allowed to call at trial an expert who provided an
unfavorable opinion to the party who first retained them.  *See
Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 2002
U.S. Dist. LEXIS 15429 at *5 n.3 (D. Del. Aug. 14, 2002).[7]
Moreover, while discovery with respect to testifying experts is
essential to allow opposing counsel to adequately prepare for
cross-examination, and to eliminate surprise at trial, "there is
no need for a comparable exchange of information regarding non-
witness experts who act as consultants and advisors to counsel
regarding the course litigation should take."  *Mantolete v.
Bolger*, 96 F.R.D. 179, 181 (D. Ariz. 1982).

Biological re-asserts on appeal the two arguments it made
below.  First, it asserts that Rule 26(b)(4)(B) does not apply in
this situation at all, because Biological only seeks to compel
production of documents, not to depose or propound
interrogatories on Atlantic Environmental.  Because the rule only
speaks of discovery "through interrogatories or by deposition,"
they reason that it simply does not cover this situation, thereby
leaving only the general discovery rule, Rule 26(b)(1), as the
applicable provision.

Second, Biological asserts that even if Rule 26(b)(4)(B)
does apply, Plymovent waived the rule's protection by submitting

---

[7] *See generally* 6-26 Moore's Federal Practice- Civil § 26.80; 8 Federal
Practice & Procedure, Civil § 2032.

the control study video and Shotwell report in support of its motion for preliminary injunction, having Shotwell ready to testify at the hearing, and voluntarily producing the video and report in discovery.

### A.

Magistrate Judge Schneider rejected Biological's first argument, explaining that if the Court were to accept Biological's reasoning, any party could completely circumvent Rule 26(b)(4)(B) simply by serving a document subpoena.

The Magistrate's decision on this issue is not contrary to law.  Many of the rule's underlying policy concerns would be undermined if Biological's argument were accepted.  Biological is just as likely to reap the benefits of Plymovent's work by obtaining documents as it would through deposition testimony or interrogatory answers.  Compelling disclosure of documents would have the same chilling effect on free consultation between a retaining party and its expert as compelling a deposition or answers to interrogatories.  Thus, the Magistrate's reasoning was correct-- holding that Rule 26(b)(4)(B) does not apply would allow an end run around the policies of the rule.

Moreover, case law suggests that Rule 26(b)(4)(B) should not be so narrowly interpreted.[8]  In *In re: Painted Aluminum Products Antitrust Litigation,* the Defendant sought to quash a document subpoena served upon its non-testifying expert.  1996 U.S. Dist. LEXIS 9911 at *2 (E.D. Pa. July 8, 1996) (Pollak, J.).  While the court ultimately denied the motion to quash, holding that the expert had not been retained "in anticipation of litigation" (a point not disputed in this case), with respect to the rule's limitation to depositions and interrogatories, the court observed, "[the rule] does not speak to requests for the production of documents under Fed. R. Civ. P. 45.  However, it is by now a truism that the various discovery devices function as an integrated system, and that in deciding the limits of privilege, we should treat the various devices similarly."  *Id.* at *3.  Likewise, the Court in *Vincent v. Morton,* albeit without discussion of the issue, applied Rule 26(b)(4)(B) to deny a motion to compel responses to twelve requests for production of documents served upon a party's non-testifying expert.  2006 U.S. Dist. LEXIS 60442 at *2 (D. Conn. Aug. 11, 2006).

Because the Magistrate's decision is supported by Rule 26(b)(4)(B)'s policy considerations and case law, the Court will

---

[8]  At oral argument below, counsel for Biological admitted that he found no case law supporting his position.  Counsel has also cited no supporting authority to this Court, other than the text of the rule itself.

affirm the decision that Rule 26(b)(4)(B) applies to the present discovery dispute.

B.

The Magistrate also correctly held that under the particular circumstances of this case, Plymovent's reliance (or attempted reliance) on the videotape and report at the preliminary injunction hearing did not effect a waiver of Rule 26(b)(4)(B)'s protection.  Relying on *Callaway Golf*, 2002 U.S. Dist. LEXIS 15429 at *5, the Magistrate concluded that no waiver occurred because Plymovent "pulled back" its expert before he testified at the hearing, and in any event, this Court, as clearly indicated in the hearing transcript, did not give the videotape and report any weight.[9]

*Callaway Golf* is both similar to and different from this case.  In *Callaway Golf*, a party changed the designation of its expert from testifying to non-testifying.  2002 U.S. Dist. LEXIS 15429 at *3.  The expert was withdrawn as a testifying expert after his deposition was scheduled, and after his expert report had been provided to the opposing party, but before his deposition actually took place.  *Id.* at *1-2.  After analyzing other cases addressing the issue, the Court concluded,

---

[9]  Indeed, the Court denied preliminary injunctive relief.

> A common theme is apparent throughout the cases
> reviewed from various jurisdictions -- the
> conversion of an expert designated for trial
> purposes under Rule 26(b)(4)(A), to a consulting
> expert, under Rule 26(b)(4)(B) is allowed and
> results in insulating that expert from discovery,
> absent the showing of exceptional circumstances.
> Although some of the cases identified herein by the
> parties did not indicate whether disclosure of the
> opinions had occurred before the change in
> designation, in those cases where such disclosure
> had clearly occurred . . . the analysis was
> consistent between those two cases, as well as with
> the non-disclosure cases.  Divulging the expert
> opinions did not alter the analysis.

*Id.* at *11-12.  Accordingly, the court held that the opposing

party was not entitled to depose the redesignated expert absent

exceptional circumstances, unless the deposition was limited to

facts and opinions that the expert developed before he was hired

as an expert witness.  *Id.* at *12-13

The question is whether the differences in this case compel

a different result from *Callaway Golf*.  On one hand, because of

the differing procedural posture of this case, Plymovent never

designated Atlantic Environmental as a testifying witness, a fact

which at least one court, in different circumstances, has

considered determinative.[10]  On the other hand, not only did

Plymovent disclose the videotape and report, it initially relied

---

[10]  *See House v. Combined Ins. Co. of America*, 168 F.R.D. 236, 245 (N.D.
Iowa 1996)("whether the witness has been designated as an expert to testify at
trial pursuant to Fed. R. Civ. P. 26(b)(4)(A) is a very significant difference
from the situation in which an expert has merely been consulted by a party but
never designated as likely to testify at trial. . . Rule 26 designation waives
the 'free consultation' privilege a party enjoys as to its non-testifying
experts.").

on those materials in support of its preliminary injunction motion before withdrawing its reliance at the preliminary injunction hearing.  Some courts have held, again under somewhat different circumstances, that disclosure or reliance on a non-testifying expert's facts and opinions waives Rule 26(b)(4)(B)'s protection;[11] while others, like the court in *Callaway Golf*, have ruled that disclosure does not automatically waive protection.[12]

As the Magistrate noted, however, none of the cases are closely analogous to this case on all relevant points.  At the time of the decision below, there was no case that involved disclosure of an expert's facts and opinions at a very early point in the litigation, reliance on the expert's facts and opinions, and then withdrawal of that reliance before the Court reached a decision.  Fortunately, since the decision below, such a case has been decided.

In *Intervet, Inc. v. Merial Limited*, 2007 U.S. Dist. LEXIS 44970 (D. Neb. June, 20, 2007), the court quashed a subpoena

---

[11] *See Atari Corp. v. Sega of America*, 161 F.R.D. 417, 418-20 (N.D. Cal. 1994) (voluntarily providing during settlement discussions videotape of non-testifying expert's interview and report waives Rule 26(b)(4)(B) protection); *U.S. v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 339 (W.D.N.Y. 1986) ("when a party offers an affidavit of an expert witness in opposition to, or in support of a motion for summary judgment, it waives its right not to have the deposition of said expert taken.").

[12] *See Callaway Golf,* 2002 U.S. Dist. LEXIS 15429 at *11-12; *FMC Corp. v. Vendo Co.,* 196 F. Supp. 2d 1023, 1042, 1046-47 (E.D. Cal. 2002) (exchange of expert reports did not waive Rule 26(b)(4)(B) protection afforded to settling defendants' experts); *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La. 1990) (exchange of "preliminary" expert reports in complex class action case did not waive Rule 26(b)(4)(B)'s protection).

14

served on an expert who had previously submitted a declaration in
support of a motion for preliminary injunction in a separate but
related litigation, involving the same parties.[13]   The party
seeking to depose the "consulting expert" asserted that Rule
26(b)(4)(B)'s protection was waived by the use of the expert's
declaration.   *Id.* at *4.   The court explained,

> The court rejects Merial's argument that all Rule
> 26(b)(4)(B) protection was waived due to the filing
> of Dr. Osorio's declaration in the [prior] Georgia
> action.   Compliance with the disclosure requirements
> of Rule 26(a)(2)(B) was not mandatory in that
> context.   Rule 26(b)(4)(B) allows the deposition of
> expert witness 'whose opinions may be presented **at
> trial**.' (Emphasis added).   Dr. Osorio was not
> designated as a testifying expert in the Georgia
> case.   At the time the case was dismissed, Dr.
> Osorio's opinions would not have been admissible at
> trial due to lack of compliance with Rule
> 26(a)(2)(B).   Furthermore, the Georgia case was
> dismissed for reasons unrelated to the merits of the
> case - the court found that Merial lacked Article
> III standing to bring the lawsuit, and Merial's
> motions for temporary restraining order and for
> preliminary injunction were dismissed as moot.

*Id.* at *4 (emphasis in original).

The Court concludes that the same result should obtain here.
As in *Intervet*, no relief was granted on the basis of the
expert's materials submitted in support of the preliminary
injunction application.   Additionally, given the Georgia court's
holding with regard to standing, the court must not have given

---

[13]   Merial first filed suit against Intervet in Georgia asserting that
Intervet was infringing its patent.   Intervet later filed suit against Merial
in the District of Columbia seeking a declaration of noninfringement,
invalidity, and unenforceability of Merial's patent.   *Intervet,* 2007 U.S.
Dist. LEXIS 44970 at *2-3.

the expert's declaration any weight because the declaration
regarding the merits of the patent dispute was irrelevant to the
jurisdictional issue.  Likewise here, the Court did not give the
Shotwell report and videotape any weight in its analysis, finding
that the expert's materials were not scientifically reliable.

Given these facts, the Court concludes that Plymovent's
withdrawal of its expert at the preliminary injunction hearing
was effective and its limited reliance on the Shotwell Report and
videotape did not waive the protection afforded to non-testifying
experts under Rule 26(b)(4)(B).[14]  Thus, Biological may only
obtain the documents sought upon a showing of exceptional
circumstances.

Before the Magistrate, Biological apparently asserted that
it would be extremely difficult for it to obtain access to a fire
station facility in which it could test Plymovent's filtration
system.[15]  However, the Magistrate correctly observed that
Biological presented no evidentiary support for its contention
and did not even assert that it had made an attempt to gain

---

[14]  As the Magistrate noted, had preliminary injunctive relief been
granted, or if this Court had relied on the materials, the result might well
be different.  Additionally, Plymovent has not given any indication that going
forward, it intends to rely on the report and videotape in any manner.  Should
Plymovent's position change, the Court may have to revisit the issue in light
of the changed circumstances.

[15]  *See* Schoenefeld Decl. Ex. K, transcript of oral argument before
Magistrate Judge Schneider, p. 7 (Mr. Messina: . . . "the prevailing rules in
that field in . . . fire service.  That those facilities tend to be rather
secure after 9-11. . . . [H]ad they gone into the station, a secure facility
in this day and age, it's not permitted for someone to do that and they look
very dimly on that.").

16

access to a facility.  Moreover, on appeal, Biological makes no argument with respect to exceptional circumstances.

Because this Court holds that no waiver occurred and that Biological has not established exceptional circumstances to overcome the protection of Rule 26(b)(4)(B), the Magistrate's decision will be affirmed.[16]

**IV.**

For the reasons set forth above, the Court will affirm the Magistrate Judge's Order Quashing *Subpoena Duces Tecum*.  An appropriate order will be issued.

Dated: August 2, 2007

s/ Joseph E. Irenas
JOSEPH E. IRENAS, S.U.S.D.J.

---

[16]  Alternatively, the Court holds that the subpoena is not "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and the Magistrate's order quashing the subpoena is affirmed on this independent ground.  *See* Schoenefeld Decl. Ex. K, transcript of oral argument before Magistrate Judge Schneider, p. 11 ("The Court: . . . if Judge Irenas has already said that the test has no credibility at all what relevance could the data derived from that test have?  I think it takes us down a road that that type of evidence would have no relevance in this case because it can't be used by anyone in support of or in opposition to a claim.").